JOHN HOEY, as President, etc., Appellant, *v.* THOMAS F. GILROY et al., Respondents.

The legislature, by virtue of its general control over public streets and highways, has power to authorize structures in the streets for the convenience of business, which, without such authority and under the common law, would be held to be encroachments and obstructions. This power it may delegate to the governing body in a municipal corporation.

Where a statute contains two distinct provisions; one specific, with precise directions to do a particular thing or permit it to be done; the other general, prohibiting certain acts, which, in their general sense include the particular thing, the prohibitory clause does not control the specific authority, but the latter is to be considered in the nature of an exception to the former.

In an action to restrain defendants, officials of the city of New York, from removing an awning over the sidewalk in front of plaintiff's place of business in said city, it appeared that said awning was originally erected by plaintiff in compliance with the requirements of an ordinance passed by the common council, and upon the passage of another ordinance changing such requirements it was, upon the request and with the consent of the city authorities, made to conform therewith. The city authorities subsequently notified plaintiff to remove the obstruction, claiming the right so to do under the Consolidation Act (§ 86, chap. 410, Laws of 1882), which empowers said common council to make ordinances " to prevent encroachments upon and obstructions to the streets * * * and to authorize and require the commissioner of public works to remove the same," declares that " they shall have no power to authorize the placing or continuing₁ of any encroachment or obstruction upon any street or sidewalk," except temporarily (sub. 4), and authorizes them " to regulate the use of streets and sidewalks for signs, sign-posts, awnings, awning-posts * * * and other purposes" (sub. 8). *Held*, that conceding the awning constituted an encroachment on the street and, as to the public was an obstruction, and so would be included in the general prohibitory clause, the power to regulate awnings gave to the common council the power to authorize their erection and maintenance, and this power was not taken away by the prohibition; that such a structure was intended to be excepted from said prohibitory clause; and that, therefore, the structure in question was not an illegal obstruction of the street, and while the common council could abate such structures by a repeal or modification of the ordinance, until this was done defendants had no right to interfere therewith.

*Hume* v. *Mayor*, *etc.* (74 N. Y. 264), distinguished.

(Argued October 20, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made April 20, 1891, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term, vacated an injunction and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William D. Guthrie* for appellant. The ordinance of the common council was valid. (Laws of 1882, chap. 410, § 86; Laws of 1813, chap. 86; Laws of 1870, chap. 137; Laws of 1875, chap. 335; Laws of 1888, chaps. 37, 214; Laws of 1872, chap. 150, § 33; Laws of 1885, chap. 26; Laws of 1886, chap. 84; Laws of 1890, chaps. 55, 58, 64; Laws of 1891, chap. 380; *King* v. *Gallun,* 109 U. S. 99; *Brown* v. *Piper,* 91 id. 37; *Terhune* v. *Phillips,* 99 id. 592; *Phillips* v. *Detroit,* 111 id. 604; *Slater* v. *Jewitt,* 85 N. Y. 61, 68; *E. C. & B. Co.* v. *Avery,* 83 id. 31, 34; *In re L. & W. O. Home,* 92 id. 116, 119; *Hume* v. *Mayor, etc.,* 74 id. 264; Laws of 1873, chap. 335; *People* v. *Charbineau,* 115 N. Y. 433.) The intention of the statute should be ascertained and carried out. (Bishop on Written Laws, §§ 64, 156; Suth. on Stat. Const. § 217; *McKenna* v. *Edmunstone,* 91 N. Y. 231; *Churchill* v. *Crease,* 5 Bing. 178; *State* v. *Goetz,* 22 Wis. 363; *Felt* v. *Felt,* 19 id. 193; *People* v. *Quigg,* 59 N. Y. 83; *People* v. *Palmer,* 52 id. 83; *People ex rel.* v. *McClave,* 99 id. 83; .Laws of 1873, chap. 335, § 17; Laws of 1884, chap. 455.) The power granted to the common council to "regulate the use of streets for awnings, awning-posts," etc., carries with it the power to authorize such use upon compliance with the regulations adopted. (*Cronin* v. *People,* 82 N. Y. 318; *State* v. *Clarke,* 54 Mo. 17.) The awning if authorized may be maintained. (*Uline* v. *R. R. Co.,* 101 N. Y. 98, 107; *Hinchman* v. *Patterson,* 17 N. J. Eq. 75, 77; *Commonwealth* v. *Houck,* 11 Wkly. Notes, 539, 540.) The structure was an awning. (*Salisbury* v. *Howe,* 87 N. Y. 128.; *Hume* v. *Mayor, etc.,* 47 id. 639; *Hawkins* v.

*Sanders,* 45 Mich. 491, 492; *Jessen* v. *Swiegert,* 66 Cal. 182; *Pedrick* v. *Bailey,* 12 Gray, 161.) Plaintiff was entitled to maintain the awning. (*People* v. *B. & O. R. R. Co.,* 117 N. Y. 150; *In re Zborowski,* 68 id. 88.) The use to which the awning is devoted, is peculiarly a public one. (*State* v. *Budd,* 26 N. Y. S. R. 533; *Allen* v. *Sackrider,* 37 N. Y. 341.) A general ordinance of a common council or department of a municipality does not confer a vested right to the exercise of the license or permission for all time. (*Kingsland* v. *Mayor, etc.,* 110 N. Y. 569, 577.) It cannot be claimed that the awning was, or is a public nuisance, or an actual incumbrance or obstruction to public travel. (*O'Leary* v. *Board of Education,* 93 N. Y. 1, 5.) If the awning was erected under due authority, and does not, as matter of fact, unreasonably encumber or obstruct the sidewalk, the threatened removal by force would be a wrongful and unlawful act on the part of the defendants. (*People* v. *Canal Board,* 55 N. Y. 390; *Davis* v. *Am. Society,* 75 id. 362; *People* v. *Dwyer,* 90 id. 402.)

*Ira D. Warren* and *David J. Dean* for respondents. This action is brought against two public officers to restrain them from performing a public duty which the law imposes upon them, and cannot be maintained. (Laws of 1882, chap. 410, §§ 317, 324; *Davis* v. *Am. Society,* 75 N. Y. 362; High on Injunction, § 1270; *Negus* v. *Dwyer,* 90 N. Y. 402; *Morgan* v. *City of Binghamton,* 102 id. 505.) At common law, any encroachment or obstruction on a public highway was an indictable nuisance. (*Rex* v. *Cross,* 3 Camp. 224; *Rex* v. *Jones,* 3 id. 230; *People* v. *Vanderbilt,* 28 N. Y. 396; *Hart* v. *Mayor, etc.,* 9 Wend. 571; *Moore* v. *Jackson,* 15 Abb. [N. C.] 211, 214, 215; *Trenor* v. *Jackson,* 15 Abb. Pr. [N. S.] 115; *Farrell* v. *Mayor, etc.,* 5 N. Y. Supp. 580, 672; *Lavery* v. *Hannigan,* 21 J. & S. 463; *Ely* v. *Campbell,* 59 How. Pr. 333, 335; *People ex rel.* v. *Mayor, etc.,* Id. 277; *People ex rel.* v. *Mayor, etc.,* 18 Abb. [N. C.] 123; *Hallock* v. *Schreyer,* 33 Hun, 111; *McCaffrey* v. *Smith,* 41 id. 117; *Callanan* v. *Gillman,* 107 N. Y. 365; *Emmons* v. *Campbell,* 22 Hun,

582; *People ex rel.* v. *Newton,* 20 Abb. [N. C.] 387; *Kiernan* v. *Newton,* Id. 398; *Davis* v. *Mayor, etc.,* 14 N. Y. 524; *People* v. *Thompson,* 98 id. 6.) The common council have no power conferred upon them by the Consolidation Act (Laws of 1882, chap. 410, § 86) to authorize the construction and maintenance of this structure. (*Hume* v. *Mayor, etc.,* 74 N. Y. 264; *Pedrich* v. *Bailey,* 12 Gray, 16; *Howe* v. *Peckham,* 6 How. Pr. 229; Laws of 1884, chap. 455; Laws of 1888, chap. 37; Laws of 1871, chap. 574, § 99; *People* v. *Mallory,* 64 How. Pr. 281; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 579; *People* v. *B. & O. R. R. Co.,* 117 id. 150; *Rex* v. *Jones,* 3 Camp. 230; Dillon on Mun. Corp. § 89; *People* v. *T. A. R. R. Co.,* 112 N. Y. 406; *Trenor* v. *Jackson,* 15 Abb. Pr. [N. S.] 124; *People ex rel.* v. *Mayor, etc.,* 59 How. Pr. 277; *Milhau* v. *Sharp,* 27 N. Y. 611, 622; *Dartmouth College* v. *Woodward,* 4 Wheat. 519; *People* v. *Sturtevant,* 9 N. Y. 273; *C. L. R. Co.* v. *City of Savannah,* 30 Fed. Rep. 648; *Fletcher* v. *Peck,* 6 Cranch, 87.) The public streets are held by the city "in trust, nevertheless, that the same be appropriated and kept open for and as part of a public street, etc., forever." (*People* v. *Kerr,* 27 N. Y. 188; *Story* v. *N. Y. E. R. R. Co.,* 90 id. 122.) The claim that this shed should be allowed to stand for the advantage of the public is without force. (*Rex* v. *Russell,* 6 East. 420; *Callanan* v. *Gilman,* 107 N. Y. 365; *People* v. *Horton,* 64 id. 610; *Vernon* v. *Vestry, etc.,* L. R. [16 Ch. Div.] 149.) The legislature has no constitutional right to authorize the appropriation of public property to a private use. (*Kane* v. *E. R. R. Co.,* 34 N. Y. S. R. 877; *Trenor* v. *Jackson,* 15 Abb. Pr. [N. S.] 115.)

O'Brien, J. The plaintiff brought this action as president of the Adams Express Company, an unincorporated association composed of more than seven persons, to enjoin the defendants from removing an awning or structure in front of the place of business used by the plaintiff's company, in the city of New York. The defendants are the public officers of the city, having power to remove obstructions unlawfully

placed or kept in the public streets of the city. The Special Term sustained the action and enjoined the defendants from removing or interfering with the structure, but the General Term has reversed the judgment. It appears from the findings that the Adams Express Company occupy a building at the corner of Broadway and Great Jones street, in the city of New York, for the transaction of their business. The building is forty feet wide on Broadway, and one hundred and thirty feet deep on Great Jones street. The company had erected and maintained, for some time prior to the commencement of this action, in front of its premises on Great Jones street, a permanent iron structure, one hundred and ten feet in length and nineteen feet in width, covering the whole sidewalk and extending over the curbstone about twelve inches. The roof was constructed of light corrugated iron, supported by iron columns about three and a half inches in diameter, placed about twelve feet apart and next to and along the inside of the curbstone, the lowest point of the roof being about ten feet above the sidewalk, the iron columns being imbedded in the soil of the street. The authorities of the city having charge of the streets notified the company to remove the structure, and on the neglect or refusal of the company to comply with the notice, the defendants were about to remove it when they were enjoined in this action. The learned judge, who gave the opinion of the court at General Term, has very clearly shown that, according to the general rules of law, this structure constitutes an encroachment upon the street, and is, as to the public at least, an obstruction. But the question here is whether it is an authorized or an illegal structure.

The legislature, by virtue of its general control over public streets and highways, has the power to authorize structures in the streets for the convenience of business that, without such authority, and under the principles of the common law, would be held to be encroachments and obstructions. This power it may delegate to the governing body in a municipal corporation, and the most important question in this case is whether the power to authorize this structure has been so conferred

upon the authorities of the city of New York. That depends upon the construction to be given to that part of the Consolidation Act which enumerates and specifies the powers conferred by the legislature upon the common council in that regard. That portion of the act which is material to the question now under consideration is as follows:

"§ 86. The common council shall have power to make ordinances, not inconsistent with law and the Constitution of this state, and with such penalties as are prescribed in the last section, in the matters and for the purposes elsewhere especially granted, namely : *   *   *

"4. To prevent encroachments upon and obstructions to the streets, highways, roads and public places, not including parks, and to authorize and require the commissioner of public works to remove the same ; but they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the same, but may authorize the temporary occupation of a portion of a street, during the night-time only, by trucks belonging to or habitually driven by actual residents of the city of New York. *   *   *

"8. To regulate the use of streets and sidewalks for signs, sign-posts, awnings, awning-posts, horse-troughs, urinals, telegraph-posts and other purposes."

Effect must be given to this statute according to the intention of the legislature. It will not do to say that because the legislature in general words declared that the common council "shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk," and in the same statute specifically authorized them to regulate awnings, the prohibition and the specific power are so contradictory and inconsistent that one or the other must be rejected. Courts in construing statutes aim to reconcile apparent contradictions and to give effect, if possible, to every part of the enactment.

It cannot be doubted that the power to regulate awnings

carried with it the power to authorize their erection and maintenance upon compliance with the rules adopted upon that subject. It is just as clear that the legislature intended to authorize the common council to permit the construction of awnings as it is that it intended to prohibit them from permitting encroachments upon or obstructions in the streets. An awning was an obstruction that was intended to be excepted from the general prohibitive words, or perhaps it would be better to say that the legislature did not intend that the general words should cover that particular case. When a statute contains two distinct provisions, one being specific with precise directions to do a particular thing or permit it to be done, and the other general, prohibiting certain acts which, in their general sense include the particular thing authorized by the direction, the general prohibitive clause does not control the specific authority. When a general intention is expressed and also a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception. (*Churchill* v. *Crease*, 5 Bing. 178; *People ex rel.* v. *McClave*, 99 N. Y. 83, 89.)

Having in view these general rules of construction we have no doubt that the common council had power to authorize the erection and maintenance of the structure in question, and it remains only to see whether this power has been exercised.

On the 10th of May, 1886, the board of aldermen and common council of the city passed a general ordinance, after it had been returned by the mayor without his approval, " to regulate the erection of awnings extending across sidewalks * * * in the city of New York," the material part of which is as follows :

" Section 1. Awnings of tin or other light metal or canvass may be erected across the sidewalks of any of the streets of the city of New York, except Broadway, Fifth avenue, Lexington avenue and Madison avenue, provided any and every such awning shall not be higher than the floor of the second story of the building, the first floor being the ground floor, but in no case to be covered with wood; and every awning or

water-shed of any kind covering one-half or more than one-half or less than the full width of the sidewalk, shall have connected therewith a gutter and leader of material and size sufficient for conducting the water from the same to the outer line of the curb stone, under a penalty of five dollars for each day such awning or water-shed shall remain without such appurtenances.

" § 2. All posts fixed in any street for the purpose of supporting any awning, shall be of iron not exceeding six inches in diameter, and the rail crossing the same shall also be of iron ; the said posts shall be placed next to, and along the inside of the curbstone, and the cross-rail, which is intended to support the awning, shall not be less than eight, nor more than ten feet in height above the sidewalk, and the said cross-rail shall be strongly secured to the upright posts. No portion or part of any canvas or cloth or tin or other light metal used as an awning, shall hang loosely or project upward or downward from the same, over any sidewalk or footpath, under a penalty of ten dollars for each day's offense."

The awning in question was built prior to the passage of this ordinance and under another then existing; but after the enactment of the above, it was changed and made to conform to it upon the request and with the consent of the city authorities.

We cannot hold that this structure is not an awning, within the meaning of the statute, but something else, because it is fairly within the description of an awning contained in the ordinances, and we think it is impossible in any aspect of the case to hold that it is an illegal obstruction in the street. In *Hume* v. *Mayor*, etc. (74 N. Y. 264), it was held that a private person injured by the falling of an awning, like the one in question, could recover against the city for the injury; that if the structure was unauthorized, it was an encroachment upon the street and a nuisance, but if placed in the street by authority of the city, then it was liable for any defect arising from want of proper supervision or from negligence in the construction. We cannot perceive that this case has any bear-

ing on the question involved here, which is whether this particular awning was constructed with or without authority. It is doubtless a very serious obstacle to the full and uninterrupted use of the street by the public, but so long as the city authorities had power to authorize its erection and have exercised that power, the courts cannot ignore their action. The common council can at any time abate such obstructions and prevent them in the future by a repeal or modification of the ordinance. The remedy for such improper use of the streets is with the city government, and not the courts.

The order of the General Term should be reversed, and the judgment of the Special Term affirmed, with costs.

All concur, except PECKHAM, J., dissenting.

Order reversed and judgment affirmed.